UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADELA AYALA, individually, and as Next Friend of L.O.A., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD M. ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare and ELKE SHAWTULLOCH, in her official capacity as Administrator of the Division of Public Health, Bureau of Vital Statistics and Health Statistics,<br><br>Defendants. | Case No. 1:16-cv-00501-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Preliminary Injunction (Dkt. 2), and Defendants' Motion to Dismiss (Dkt. 13). The motions are fully briefed, and the Court has heard oral argument. For the reasons explained below, the Court will grant in part and deny in part each motion.

## BACKGROUND

In 2012, Plaintiff Adela Ayala was in a same-sex relationship with Janina Oquendo. Ayala and Oquendo wanted to get married, but the State of Idaho prevented

them from doing so because it precluded same-sex marriage.[1] *Id*. ¶ 50. Through artificial insemination, Oquendo conceived and gave birth to L.O.A. in 2012. *Id*. ¶¶ 44-45. Ayala and L.O.A. have no biological relationship, and Oquendo is listed as the birth mother on L.O.A.'s birth certificate; no birth father is listed. *Id*. ¶¶ 59-60. Ayala is not listed on the birth certificate, but L.O.A retains Ayala's surname. *Id*. ¶ 58 & 61. Since L.O.A.'s birth, Ayala and Oquendo both treat L.O.A. as their daughter and have publicly declared to family and friends that L.O.A is *their* daughter. *See* Oquendo Decl. at ¶ 12, Dkt. 26-3; *see also* Ayala Decl. at ¶ 16, Dkt. 4-1; *Pl.'s Br*. at 2, Dkt. 2-1.

On November 17, 2017, Ayala filed her complaint against two defendants, Richard Armstrong as the director of Idaho Department of Health and Welfare, and Elke Shaw-Tulloch as Administrator of the Division of Public Health, Bureau of Vital Records and Health Statistics. *Compl.,* Dkt. 1. She also filed a motion for preliminary injunction. The motion asks for a "preliminary injunction to protect and recognize Ms. Ayala's fundamental right as the parent of L.O.A so they can receive the same legal protections and benefits derived from the parent-child relationship as a child with opposite sex parents without further delay." *Plf. Motion,* p.1, Dkt. 2. The motion also asks the Court to "order that Defendants to [sic] apply Idaho's Paternity Act, Vital Statistics Act and Artificial Insemination Act in a sex-neutral manner, recognize the parentage of same-sex

---

[1] There appears to be no dispute that Ayala and Oquendo would have been married but for the State of Idaho's law against same-sex marriage. In her Declaration, Oquendo specifically corroborates Ayala's assertion by stating that "Adela and I were engaged in February of 2012 and planned to get married, but were unable to get married because Idaho had enacted a statute and passed a constitutional amendment prohibiting same-sex couples from marrying, and the State refused to recognize the legality of same-sex marriages performed in other states." *See* Oquendo Decl. at ¶ 3, Dkt. 26-3.

couples and their children, and issue Plaintiffs an amended two-parent birth certificate recognizing Plaintiff Ayala as the parent of her minor child L.O.A." *Id.*

The three statutes at issue are I.C. § 39-255, I.C. § 39-5405, and I.C. § 7-1106. The first two statutes create a presumption of paternity for a husband married to the birth mother at the time of conception or birth. Idaho Code § 39-255(e)(1) provides that if the birth mother is married, the name of the husband is entered as father on the birth certificate unless there has been a judicial determination or affidavit establishing he is not the biological father. Idaho Code § 39-5405(3) gives the husband of a married mother who gave birth through artificial insemination parental rights if he consented to the artificial insemination. The third statute, I.C. § 7-1106, permits the biological father of a child to acknowledge paternity even though he is not married to the child's mother.

Defendants responded to the motion for preliminary injunction, but also filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The Court heard oral argument on the motions, and now issues the following decision.

## ANALYSIS

1. **Defendants' Motion to Dismiss**

Defendants contend that Ayala's request for a change to L.O.A.'s birth certificate is barred by Eleventh Amendment sovereign immunity because she seeks to correct a past wrong. Additionally, Defendants contend that the Court lacks subject matter jurisdiction because Ayala lacks standing.

A. *Sovereign Immunity*

The Eleventh Amendment generally bars federal lawsuits against a state. *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.1992). However, the Supreme Court created an exception to this rule in *Ex Parte Young*, 209 U.S. 123 (1908). In that decision, the Supreme Court concluded that Eleventh Amendment immunity precludes prospective injunctive relief unless it addresses a continuing violation of federal law. But a "continuing violation" is different from "continuing effects." When fashioning a remedy, courts must be guided by equitable principles which "must be designed as nearly as possible to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct." *Milliken v. Bradley*, 433 U.S. 267, 280 (1977) (Internal citations omitted).

In *Milliken v. Bradley*, 433 U.S. 267, 269 (1977) the Supreme Court remedied a past violation to address ongoing effects of that violation. The court explained that the remedial plans were necessary "to eliminate a de jure segregated school system" *id*. at 289, and "wipe out *continuing conditions of inequality* produced by the inherently unequal dual school system." *Id*. at 290. (emphasis added). *Milliken* addressed the "continuing effects" rationale in the school desegregation context, but its holding is not limited to that context. In fact, the Supreme Court has stated that "[a] school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right. The task is to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution." *See Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15-16 (1971).

Several circuit courts, including the Ninth Circuit, have applied the "continuing effects" rationale to cases outside the school segregation context. *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007) (upholding under the Eleventh Amendment an injunction requiring expungement from university records of an unlawful censure, since this relief served the purpose of preventing present and future harm stemming from a past violation); *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95–98 (2d Cir. 2007) (noting the Eleventh Amendment does not bar an unlawfully terminated employee's claim for reinstatement, even though it relies on a theory of ongoing harm from a past violation); *Clark v. Cohen*, 794 F.2d 79 (3d Cir. 1986) (ordering the state to remedy the continuing harmful effects of a woman's unconstitutional detention at a state mental health institution, noting the "square holding in Milliken II that a federal court may order state officials to fund from the state treasury remedial measures found necessary to undo the harmful effects of past constitutional violations[.]");*Kimble v. Solomon*, 599 F.2d 599 (4th Cir. 1979) (allowing an order of "prospective restoration" of Medicaid benefits wrongfully reduced without prospective notice); *Thomas S. v. Flaherty*, 902 F.2d 250, 255 (4th Cir.1990) (holding that prospective relief to class members who continue to suffer from unconstitutional conditions at state psychiatric hospital does not violate Eleventh Amendment).

Here, the State of Idaho's past unconstitutional acts have led to "continuing conditions of inequality" for same-sex couples who desired to marry but were unconstitutionally denied that right by the State of Idaho. *See Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). In *Obergefell,* the Supreme Court concluded that same sex couples

have a fundamental right to marry guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and that state laws excluding same sex couples from civil marriages are constitutionally invalid. One "continuing condition of inequality" resulting from Idaho's unconstitutional prohibition against same-sex marriage is evidenced on L.O.A.'s birth certificate. Ayala was not listed as a parent on L.O.A.'s birth certificate because the State of Idaho denied Ayala the right to marry the child's biological mother.

Ayala has presented substantial evidence to support a finding that she and Oquendo would have been married at the time of L.O.A.'s conception or birth, but for the same-sex marriage ban in Idaho. The couple was "engaged in February of 2012 and planned to get married, but were unable to get married because Idaho had enacted a statute and passed a constitutional amendment prohibiting same-sex couples from marrying, and the State refused to recognize the legality of same-sex marriages performed in other states." *See* Oquendo Decl. at ¶ 3, Dkt. 26-3. At the time of L.O.A.'s birth, Oquendo learned that Ayala's name could not be recorded on the birth certificate because the Idaho Department of Health and Welfare birth certificate form did not recognize parentage of same-sex couples. Id. at ¶ 8. However, as discussed below, if Ayala and Oquendo had been married, Ayala would have been listed as a parent of L.O.A. on the birth certificate pursuant to I.C. §§ 39-255 and 39-5405. And although Ayala was unable to be listed as a parent on L.O.A.'s birth certificate, Oquendo "[c]onsistently and publicly declared to . . . family, friends, and co-workers that L.O.A. is *our* daughter." *See* Oquendo Decl. at ¶ 12, Dkt. 26-3. (emphasis added). Further,

Oquendo stated she has "[n]o objection to Adela Ayala being legally declared the parent of L.O.A. and would request that she be listed as a parent on L.O.A.'s birth certificate." *Id*.

Thus, Ayala has presented evidence that because the State of Idaho denied Ayala the right to marry Oquendo, she was likewise denied the opportunity to be named on L.O.A.'s birth certificate, and her name remains absent from the birth certificate because of that discrimination. Accordingly, the motion to dismiss based on sovereign immunity will be denied.

B.     *Standing*

Standing requires Ayala to establish that (1) she suffered an injury in fact, (2) the injury is fairly traceable to the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. The Supreme Court has explained that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Ayala bears the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Ayala's Complaint asserts two claims under the Fourteenth Amendment – an equal protection claim and a due process claim. In plaintiff's briefing, counsel suggests that the three relevant Idaho statutes "[f]acially and as applied, discriminate on the basis of sexual orientation and sex." *See Pl.'s Br.* at 17, Dkt. 2-1. But the briefing is disjointed and confusing when it comes to addressing these two related but different assertions. To be clear, generally "a person to whom a statute may constitutionally be applied may not

challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Los Angeles Polic Dept. v. United Reporting Pub. Corp.,* 528 U.S. 32, 38 (1999) (Internal quotation and citation omitted). Exceptions apply to this general rule; typically for certain First Amendment challenges to statutes based on overbreadth. *Id.* This is not that case though. Ayala has not coherently articulated how a facial challenge would apply here. Accordingly, the Court will only address the "as applied" challenge to each statute.

First, Idaho Code § 39-255(e)(1) provides that if the birth mother is married, the name of the husband is entered as father on the birth certificate unless there has been a judicial determination or affidavit establishing he is not the biological father. Here, Ayala has asserted an injury in fact by alleging that because the State of Idaho prevented her from being married to L.O.A.'s birth mother at the time of conception or birth, I.C. § 39-255(e)(1) prevented her from being entered as a parent on L.O.A.'s birth certificate. In turn, this has prevented Ayala from having all the rights of a legal parent to L.O.A. That injury is directly traceable to the State of Idaho's unconstitutional laws preventing same-sex marriage and parenthood based upon that marriage. Finally, the injury will likely be redressed by a favorable decision that Ayala would have been named as L.O.A.'s parent but for these unconstitutional laws because Ayala has presented evidence that she would have been married to Oquendo at the time of L.O.A.'s conception and birth. Thus, Ayala has standing to pursue her claim that I.C. § 39-255(e)(1) is unconstitutional as applied to her.

Idaho Code § 39-5405(3) gives the husband of a married mother who gave birth through artificial insemination parental rights if he consented to the artificial insemination. Ayala has also adequately alleged an injury in fact here. Ayala has alleged that because the State of Idaho prevented her from being married to L.O.A.'s birth mother at the time of conception and birth, I.C. § 39-5405(3) prevented her from receiving the same parental rights a husband would have received even though she consented to the artificial insemination of Oquendo. In turn, this has prevented Ayala from having all the rights of a legal parent to L.O.A. That injury is likewise directly traceable to the State of Idaho's unconstitutional laws. And the injury will likely be redressed by a favorable decision that Ayala would have been given parental rights but for the State of Idaho's laws. Thus, Ayala has standing to pursue her claim that I.C. § 39-5405(3) is unconstitutional as applied to her.

The third statute, Idaho Code § 7-1106, permits the alleged father of a child to acknowledge paternity even though he is not married to the child's mother. The statute requires a signed and notarized voluntary acknowledgment of paternity by the alleged father. For purposes of Section 7-1106, "father" refers to the biological father of a child born out of wedlock. I.C. § 7-1103(4). Ayala has not asserted an injury in fact based on this statute because she has not asserted that she is the biological parent of L.O.A. Thus, Ayala does not have standing to challenge I.C. § 7-1106, and the Court will dismiss Ayala's I.C. § 7-1106 claim.

2.  **Plaintiff's Motion for Injunctive Relief**

Plaintiff's Motion for Preliminary Injunction asks the Court to enjoin Defendants from continuing to enforce their policy, custom, and practice of denying same-sex couples the ability to (1) file a voluntary acknowledgment of paternity affidavit, (2) file a consent and request form for a child conceived and born by artificial insemination; and (3) obtain a two-parent birth certificate. She also seeks an injunction ordering Defendants to issue an amended birth certificate recognizing Ayala as L.O.A.'s parent.

To obtain injunctive relief the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

A.  *Likelihood of Success on the Merits*

As noted above, Ayala has standing to pursue her claims regarding two of the statutes, I.C. § 39-255 and I.C. § 39-5405. But these claims are more narrow than the injunctive relief Ayala seeks. Ayala is likely to succeed on her request that the State of Idaho issue an amended birth certificate for L.O.A. naming Ayala as L.O.A.'s parent. This is true because Ayala will likely succeed on her assertion that, but for Idaho's unconstitutional law prohibiting same-sex marriage, Ayala would have been married to L.O.A.'s birth mother at the time of conception and birth, and therefore would have been listed as a parent on L.O.A.'s birth certificate pursuant to I.C. § 39-255 and I.C. § 39-5405.

Ayala is not likely to succeed on her request that the Court order Defendants to stop enforcing a policy, custom, and practice of denying same-sex couples the ability to (1) file a voluntary acknowledgment of paternity affidavit, (2) file a consent and request form for a child conceived and born by artificial insemination, and (3) obtain a two-parent birth certificate. The first request is related to I.C. § 7-1106, which the Court will dismiss based upon lack of standing as explained above. The other requests are untethered to marriage, which is at the heart of why the statutes were discriminately applied to Ayala. There is no assertion that the statutes are currently being applied differently to same-sex couples than heterosexual couples. The difference is rooted in a past denial of marriage, which today is legal for both same-sex couples and heterosexual couples in Idaho. Ayala's claims affect what is likely a very small group of individuals in Idaho – same-sex couples where one member of the couple gave birth to a child, but the other member of the couple was prevented from being listed on the child's birth certificate because the State of Idaho unconstitutionally prevented the couple from marrying at some point in the past.

B.     *Irreparable Harm*

Currently Ayala is serving as L.O.A.'s foster parent. Ayala (and L.O.A.) will be irreparably harmed if the status quo is not maintained until this case is resolved. But that does not mean the Court should order the State of Idaho to issue an amended birth certificate listing Ayala as a parent at this point. Although that is the likely outcome at the end of this case, at this point there would only be irreparable harm if Ayala did not remain the foster parent for L.O.A. until this case is resolved. If Ayala is removed as the

foster parent, the bond between L.O.A. and Ayala, and the rights Ayala currently has to care for L.O.A., will be broken and both will be irreparably harmed. However, given Oquendo's declaration that she believes Ayala should be legally declared L.O.A.'s parent, the Court is not concerned about other harm at this point. *Oquendo Decl.*, Dkt. 26-3. If something changes in this regard, Ayala may file an emergency motion for a TRO.

### C. *Balance of Hardships*

The Court concludes that the balance of hardships tips in favor of Ayala. There really is no competing hardship here. The only concern is that the relationship between Ayala and L.O.A. remain intact, and that Ayala retain the rights of a foster parent to L.O.A. until this case is resolved.

### D. *Public Interest*

The public has a strong interest in the well-being of children, and in cultivating the relationship between a parent and child. Here, the public has an interest in maintaining the relationship between Ayala and L.O.A. Thus, the public interest warrants an injunction that Ayala remain as the foster parent to L.O.A. until this case is resolved, which will likely require an amended birth certificate naming Ayala as a parent to L.O.A.

## ORDER

**IT IS ORDERED:**

1. Ayala's Motion for Permanent Injunction (Dkt. 2) is **GRANTED in part and DENIED in part** as explained above.

2. Defendants' motion to dismiss (Dkt. 13) is **GRANTED in part and DENIED in part** for the reasons stated above.

3. Plaintiff's Motion for Extension of Time is **GRANTED**.

4. Plaintiff's Motion to Seal is **GRANTED**. The Declaration of Adela Ayala shall be sealed. The Clerk of the Court is ordered to unseal the remaining documents.

5. The Court assumes this case will proceed on the expedited track, possibly only requiring an evidentiary hearing or short court trial after a short discovery period. In any event, the Court will set a telephonic scheduling conference to discuss the way forward in a separate notice.

DATED: August 24, 2017

B. Lynn Winmill
Chief Judge
United States District Court