Howard A. Belodoff, ISB #2290
Jennifer A. Giuttari, ISB #10008
Idaho Legal Aid Services, Inc.
1447 South Tyrell Dr.
Boise, ID 83706
Phone: (208) 336-8980, Ext. 1106 and 1503
Email: howardbelodoff@idaholegalaid.org
          jennifergiuttari@idaholegalaid.org

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADELA AYALA, individually, and as next friend of L.O.A., a minor child, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>RUSSELL BARRON, in his official )<br>capacity as Director of the Idaho Department of )<br>Health and Welfare and ELKE SHAW-TULLOCH, )<br>in her official capacity as Administrator of the )<br>Division of Public Health, Bureau of Vital Records )<br>and Health Statistics, )<br>Defendants. )<br>_____ ) | Case No. 1:16-cv-00501-BLW<br><br>**REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT (Dkt. 38)** |

COME NOW Plaintiffs, Adela Ayala and L.O.A., by and through their attorneys, Howard A. Belodoff and Jennifer A. Giuttari, Idaho Legal Aid Services, Inc., to file, this Reply to Defendants' Response to Motion for Summary Judgment (Dkt. 38).

### I.     PRELIMINARY STATEMENT

Plaintiff Ayala has submitted a Declaration (Dkt. 38-3) asserting that she and Janina O discussed getting married but "were prevented from being married prior to the birth of L.O.A. because Idaho did not recognize same-sex marriage as being legal." *Id*. at ¶ 6 & ¶ 7. Ayala further stated she and Janina "wanted to be married before the child was born but did not want to have to

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 1

leave the State of Idaho to get married. I love Idaho, and I wanted to get married in the state where we lived." *Id*. at ¶ 9. Ayala "decided to propose even though we could not get legally married in Idaho after Janina became pregnant with our daughter." *Id*. at ¶ 10. Ayala did propose, and celebrated with their families. *Id*. at ¶ 11-17. Defendants do not dispute these facts and have not submitted evidence to contradict Ayala's intent to be married before the birth of L.O.A. Defendants contend that Ayala's intent to get married is only "speculation" because Ayala did not set a date to get married until November 2013, a year after L.O.A.'s birth, and because Ayala did not marry after same-sex marriage was "permitted" in Idaho. Dkt. 42 at ¶ 1. As Ayala explained, the reason a date was not set before L.O.A.'s birth was due to Idaho's prohibition against same-sex marriage. The fact that Ayala subsequently set a date to celebrate and give meaning to their relationship does not dispute the fact she did not, and could not, legally finalize her marriage because of Idaho's policy of discriminating against same-sex couples by not recognizing their marriages as valid before L.O.A. was born.

Defendants do not dispute that Ayala had to request the Court's permission to attend the Child Protection proceeding and that she was not allowed to participate in the hearing or have an attorney protect her interests in retaining custody of L.O.A. Dkt. 38-3 at ¶ 56. Defendants do not dispute that Ayala was also not entitled to receive or review the Petition, court orders, or the case management reports and that the case manager considered Janina's mother and grandmother, who resided in California, for the permanent placement of L.O.A. *Id*. at ¶ 57 & ¶ 58. Defendants' records establish that the Department considered permanently placing L.O.A. with Janina's relatives even after the Complaint was filed in this action. *See* Declaration of Jennifer Giuttari ("Dec. Giuttari") at Ex. C at IDHW-0031, 0040, & 0042. It was not until August 29, 2017 that Defendants considered Ayala as custodian placement of L.O.A. *Id.* at Ex. C at IDHW-0035.

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 2

Defendants only contend that the Department obtained a court order permitting disclosure of "material from the case" in response to Plaintiffs' discovery requests. Dkt. 42 at ¶ 2. However, the Order allowing the disclosure of the "materials" was signed on January 16, 2018, was not served on Ayala or counsel, and was not provided to Plaintiffs until on February 22, 2018, as part of the response to summary judgment.[1] *See* Dkt. 44-1 at Attachment. Defendants did not provide Plaintiffs with the December 11, 2017 *Decree, Findings of Fact and Conclusion of Law and Judgment* until their Response was filed under seal in this Court. Dkt. 43 at Exhibit 1 - Exhibit 3.

There is no material dispute that the Rules Specialist's October 22, 2014 recommendation to change the "Form of Consent" in Vital Statistic Rules was not implemented because the Rules continue to refer to "husband" rather than "each spouse." *See* Dkt. 38-4 at 4-5 (Exhibit 1) & 6-8 (Exhibit 2). The Artificial Insemination Act requires that the consent requirements apply to the mother of the conceived child and her "husband." All persons who violate the consent requirements are guilty of a misdemeanor whether or not a birth certificate is issued to a couple. I.C. §§ 39-5406 & 39-5407 (2017). Defendants admitted that they have not, and do not, enforce the consent requirements of the Artificial Insemination Act.[2]

## I.   ARGUMENT

The issues before the Court concern the elimination of the lingering vestiges of inequality and stigma, the continuing harm inflicted upon a historically unpopular group, and the fundamental

---

[1] Plaintiffs were served with a limited production of the child protection documents. Most documents were not produced in discovery. *See* Dec. Giuttari at Ex. C; *see also* Dec. Giuttari at Ex. B for unprotected documents Defendants produced in discovery.

[2] In response to Plaintiffs' Interrogatories requesting the number of consents filed under the Artificial Insemination Act, including but not limited to same-sex married couples, since January 1, 2010 Defendants stated: "**ANSWER: Defendants are unaware of any such consents filed by any couples.**" Dkt. 38-4 at 10 (emphasis added). *See also* Defendants' Response to Request for Production No. 7 that requested production of all consents filed under the Artificial Insemination Act since 2010 which states: "**Defendants are not aware of any such consents**." *Id.* at 11(emphasis added).

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 3

rights and intimate choices of gay and lesbian couples to conceive a child. Plaintiffs contend Idaho's Artificial Insemination and Vital Statistics Acts violate the liberty and equality guarantees of the Due Process and Equal Protection Clauses of the United States Constitution by discriminating against same-sex couples and their children on the basis of sex and sexual orientation. Plaintiffs urge the Court to reject the invented *post hoc* justifications for continuing the discriminatory treatment of gay and lesbians.

Ayala is contending the Court should recognize her as the "legal parent" not the "intended" parent of L.O.A. This is the type of disparagement of Plaintiffs that needs to end. Plaintiffs continue to be fearful that Defendants will remove L.O.A., who she conceived and raised since her birth, from her custody and place her with another family unless she agrees with their demands that she adopt L.O.A. *See* Declaration of Adela Ayala filed in support of this Reply. Ayala should not be forced to adopt L.O.A. and continue to be a foster parent when other similarly situated, opposite-sex persons, who were allowed to marry before and after the birth of their children, are recognized as "legal parents."

1. **Plaintiffs' Claims Concern Independent Discrete Discriminatory Acts That Accrued Within The Statute Of Limitations.**

Plaintiffs' allegations establish an "independently wrongful, discrete act . . , which began the running of the statute of limitations anew, notwithstanding the prior denial pursuant to essentially the same regulation . . . [.]" *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012). The Defendants' refusal to recognize Plaintiff Adela's parental rights after gay and lesbian individuals were permitted to marry, and not allowing her to participate in the court proceeding concerning L.O.A.'s custody are separate and new violations of Plaintiffs' rights. *See* Dkt. 40 *Response to Defendants' Motion for Judgment on Pleadings*.

**2. The Court Should Grant Summary Judgment Because Defendants Concede That Plaintiffs' Rights To Equal Protection And Due Process Were Violated When Ayala Was Prevented From Marrying Prior To Birth Of L.O.A.**

The Ninth Circuit has determined there is no legitimate justification for the unequal treatment between same-sex and opposite-sex parents. *Latta v. Otter*, 771 F.3d 456, 474 (9th Cir. 2014) (citing *U.S. v. Virginia*, 518 U.S. 515, 533 (1996)). The Ninth Circuit observed, for gay and lesbian parents "[l]ike all human beings, their lives are given greater meaning by their intimate, loving, committed relationships with their partners and children." *Id.* at 467. The Supreme Court subsequently held that same-sex couples have a constitutional right to marriage and invalidated Idaho's statutory and constitutional prohibitions. *See Obergefell v. Hodges*, __ U.S. __, 135 S.Ct. 2584 (2015). The *Obergefell* and *Latta* decisions recognize Ayala's fundamental rights to exercise her parental rights as a parent in a same-sex relationship who conceives a child by artificial insemination on an equal basis as a parent in an opposite-sex relationship. This Court has previously recognized that "the State of Idaho's past constitutional acts have led to 'continuing conditions of inequality' for same-sex couples who desire to marry but were unconstitutionally denied that right by the State of Idaho." Memorandum Decision and Order, Dkt. 31 at 5 (quoting *Id.* at 2584).

L.O.A was born on August 25, 2012. Dkt. 38-3 at ¶ 23. It was not until after October 14, 2014, over two years after L.O.A. was born, that a married, same-sex couple could have the "female spouse" listed on the birth certificate at the time of birth. Dkt. 38-4 at Exhibit 5.[3] Defendants continue to deny same-sex couples the right to be listed as a parent on birth certificates

---

[3] The November 19, 2014 email on the "Procedures for Same Sex parents on Birth Certificates" states, in part,: "**If the birth mother delivers a child on or after October 15, 2014 and she was married to a female spouse at the time of birth, conception, or anytime in between**, the female spouse can be listed as a second parent on the Idaho Certificate of Live Birth at the time of birth certificate entry." (emphasis added).

even if legally married before the birth of their child.[4] The Court, as a matter of law, should find that Plaintiffs' fundamental rights were unconstitutionally denied by Idaho's past constitutional violations and should remedy the "continuing conditions of inequality" imposed on sex-couples who could not marry prior to the birth of their child.[5]

### 3. Defendants Have Failed To Cite To Admissible Evidence Creating A Genuine Dispute Of Facts That The Artificial Insemination Act Has Been Applied In A Neutral Manner.

The Artificial Insemination Act limits the use of artificial insemination to conceive a child to a married women's "husband." Idaho's prohibition against gay and lesbian marriages prohibited Ayala from being married before L.O.A. was conceived by artificial insemination and born. The Artificial Insemination Act, due to Ms. Ayala's sexual orientation and sex, treats her unequally by depriving her of the legal status and rights that are afforded to a married women and her male "husband" without any justification. Defendants argue that the statutes have been applied in a neutral manner. Dkt. 41 at 4. Defendants rely upon the Declarations of James B. Aydelotte, who merely references three blank versions of a Certificate of Live Birth, a November 19, 2014 email, and conclusory statements regarding the administration of Artificial Insemination Act. *Id*. (citing Dkts. 14 at ¶ 3 & 41-1 at ¶ 2). Defendants have not produced any supporting evidence or cited to any statistical records as to the number of the birth certificates filed by same-sex parents that

---

[4] Plaintiffs served a Request for Production of Documents requesting all amended birth certificates issued since 2014 to same-sex couples who were "married and had a child born in the State of Idaho before the same-sex marriage was legal." Dec. Giuttari at Ex. A at Request for Production No. 13. Defendants' Response, in part, stated: Such cases would have occurred only through adoption proceedings . . . ."

[5] In response to Plaintiffs' Interrogatory No. 10 requesting Defendants to "identify and describe with particularity each and every fact and document that Defendants contend shows or establishes that Idaho's unconstitutional prohibition against same-sex marriage was **not** a continuing condition of inequality that harmed Ms. Ayala during her relationship with Janina O." stated "Objection. The term 'continuing condition of inequality' is undefined and does not appear to be relevant, because Plaintiff has been legally permitted to marry a same-sex partner in Idaho for more than three years but has chosen not to marry Janina O." Dec. Giuttari at Ex. A.

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 6

establish that hospitals or other birthing facilities have "applied the statutes in a neutral manner." Dkt. 41 at 4. Defendants have not amended the Vital Statistics Administrative Rules for filing "Requests and Consents for Artificial Insemination" to allow same-sex couples to file consents.[6] Dkts. 38-4 at 8 (Exhibit 2). The instructions for the Idaho Certificate of Live Births – How to Complete – A Paper Certificate (Updated 1/17/2012) continue to only refer to "mothers" and "fathers" and make no reference to same-sex couples. *Id*. at 16 (Ex. 9).

Plaintiffs served Interrogatories requesting the number of birth certificates "where both parents were identified or listed as same sex" and "where both parents were identified or listed as the opposite sex." *See* Dec. Giuttari Ex. A at Interrogatory Nos. 16 &17. Plaintiffs also served Interrogatories requesting the number of birth certificates where parents were identified as "unmarried" or "married" "and of that number, separately identify the number who were male-female parents, male-male parents, and female-female parents." *Id*. at Interrogatory Nos. 18 & 19. In all four Interrogatories Defendants objected and stated Defendants could not provide any answers because "Defendants do not maintain any statistics identifying the manner of conception or the sexual orientation of parents listed on birth certificates, so it would be impossible to accurately answer this request." *Id*. Defendants' Response to a Request for Production of Documents also stated that birth certificates do not specify the parents' sexes.[7]

---

[6] Rule IDAPA 16.02.08.900.01 reads in part: The form shall be signed and dated by the wife, **husband**, and the physician who participates in the procedure of artificial insemination. The form shall include the statement: "The undersigned **husband** and wife do hereby consent of their own free will and choice to said artificial insemination. . . ." (emphasis added).

[7] Plaintiffs also served Requests for Production of Documents requesting Defendants to "[p]roduce all birth certificates issued since 2014 by the State of Idaho, that identifies or lists both parents as female." *See* Dec. Giuttari at Ex. A (Request for Production No. 12). Defendants answered by stating: "Response: Objection. Birth certificates do not specify the parents' sexes. Accordingly, it would be impossible to accurately respond to this request. In addition, birth certificates are confidential records not open to public inspection." *Id*. Plaintiffs also requested the birth certificates that identifies or lists both parents as male. *Id*. (Request for Production No. 11). Defendants gave the same Response for parents who were both female. *Id*.

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 7

Defendants' Answers to Interrogatories and Responses to the Request for Production of Documents contradict Mr. Aydleotte's Declaration that the statutes are applied in a neutral manner based upon his personal knowledge. *See* Dec. Giuttari at Ex. B. Defendants admit that they have no statistics on the number of opposite-sex and same-sex parents that filed birth certificates using the mother-father, mother-mother, or father-father forms that were issued after November 19, 2014. Since Defendants are not enforcing the Artificial Insemination Act's consent requirements under I.C. § 39-3505(3), Mr. Aydleotte's conclusory statements are speculation and inadmissible hearsay that lack any foundation of personal knowledge for purposes of summary judgment. *See* I.R.C.P. 56(c)(4). "Heightened scrutiny, however, demands more than speculation and conclusory assertions, especially when the assertions are of such little merit." *Latta*, 771 F.3d at 476. The Court should grant summary judgment in favor of Plaintiffs because Defendants have not cited to any admissible evidence that creates a material dispute in facts that the statutes are not applied in a neutral manner. I.R.C.P. 56(c)(1)(B).

**4. Idaho Statutes Continue To Discriminate Against Gay And Lesbian Parents.**

Defendants' administration of Idaho's statutes continue to perpetuate unconstitutional discrimination against gay and lesbian parents. Mr. Aydleotte's Declaration states that Defendants consistently apply the presumption that a mother's "husband" is considered the parent under the Artificial Insemination Act as provided in I.C. § 39-3505(3) without compliance with the express consent requirements. Dkt. 41-1 at ¶ 2.[8] Additionally, "regardless of the method of conception, the birth mother's spouse is listed on the child's birth certificate . . . [e]ven if the birth mother's spouse is a women, she is listed as a parent on the birth certificate." *Id*. Assuming this is true, Plaintiffs

---

[8] The martial presumption is not applied if the "spouse is a husband who completes an affidavit of non-paternity at the hospital, and that is accompanied by an affidavit of paternity establishing the child's biological father." Dkt. 41-1 at ¶ 2.

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 8

would agree that "married" opposite-sex and "married" same-sex couples would be treated equally because the same-sex couple does not have to file consents for the artificial insemination or adopt the child to be a "legal parent." However, Defendants' policies discriminate against unmarried, same-sex couples who, unlike unmarried, opposite-sex couples, are not recognized as "legal parents." When an unmarried, opposite-sex couple gives birth by artificial insemination there is no biological connection and no consent required by Defendants. However, Defendants provide a statutory procedure to establish parentage by using the voluntary acknowledgement of paternity affidavit.[9] "A voluntary acknowledgement of parentage may be executed by the mother, . . or father, . . regardless of the marital status of the mother or father." *See* I.C. § 7-1111(2). The mother and a non-biological father of a child conceived by artificial insemination does not have to file an adoption proceeding to have their parentage of the child recognized by Defendants.

The same is not true for same-sex couples. Defendants' policies specifically prohibits same-sex couples who artificial conceive a child from signing a voluntary acknowledgement of paternity to establish paternity. Defendants' November 19, 2014 *Procedures for Same Sex parents on Birth Certificates* specifically excludes unmarried same-sex couples from establishing parentage without being forced to use adoption proceedings.[10] The *Procedures* state: "Please note that the Acknowledgement of Paternity Affidavit form cannot be used to add a second female parent to the Idaho Certificate of Birth. The birth mother must be married to a female spouse at the time of birth, conception, or anytime between in order for a second female parent to be listed at the

---

[9] I.C. § 7-1106(1), in part, states: "A voluntary acknowledgement of paternity for an Idaho birth shall be admissible as evidence of paternity and shall constitute a legal finding of paternity upon the filing of a signed and notarized acknowledgement with the vital statistics unit of the department of health and welfare."

[10] *See* Answer to Interrogatory No. 5 which states: "Idaho law provides adoption as the only legal method to become a parent for a person not biologically related to the child and not married to the birth mother at or between the times of conception or birth." *See* Dec. Giuttari at Ex. A.

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 9

time of entry." Dkt. 38-4 at 12 Ex. 2. Defendants under any level of scrutiny cannot justify this discriminatory treatment of unmarried gay and lesbian couples.

> 5. **The Due Process Clause Protects The Fundamental Rights Of Gay And Lesbian Couples To Be Free Of Governmental Intrusion Into Their Decision To Bear Or Beget A Child.**

For nearly one hundred years, the United States Supreme Court has recognized that an essential part of the liberty protected by the Due Process Clause is the right to bear or beget a child free of government intrusion. The Court has affirmed that historically sanctioned and state imposed inequality against gay and lesbians and their children will no longer be tolerated in federal or state laws. *See U.S. v. Windsor*, __ U.S. __, 133 S.Ct. 2675, 2694 (2013) ("[I]t humiliates tens of thousands of children now being raised by same-sex couples. The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives."); *see also Obergefell*, 135 S.Ct. at 2600 (The right to marry "safeguards children and families and thus draws meaning from the related rights of childrearing, procreation, and education.") (citations omitted); *Latta*, 771 F.3d at 473 ("Denying children resources and stigmatizing their families on this basis [persons who have capacity to procreate] is 'illogical and unjust.' . . . It is counterproductive, and it is unconstitutional." (quoting *Plyler v. Doe*, 457 U.S. 202, 220 (1982)).

Defendants' contention that Ayala has no right to decide, free of government intrusion, to become a legal parent of L.O.A. absent the State's consent ignores long standing due process principles on the right to bear or beget a child.[11] This is not a unique or novel concept of a

---

[11] The decision in *Washington v. Glucksberg* has little relevance to the fundamental rights at issue in this matter. The question presented was "whether the protections of the Due Process Clause include a right to commit suicide with another's assistance." 521 U.S. 702, 724 (1997). The Court recognized the "substantive-due-process tradition of interpreting the Due Process Clause to protect certain fundamental rights and 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education, . . .' *Id*. at 726 (citing and quoting *Planned Parenthood of Southeastern Pa. v.*

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 10

constitutionally protected liberty. Other states have recognized that unmarried same-sex couples have an equal right to being "legal parents."[12] Defendants' policies allowing similarly situated opposite-sex parents to be recognized as legal parents by using a Voluntary Acknowledgment of Paternity affidavit refutes their contention that "established tradition" requires Ayala, who is "neither biologically related to the child nor married to her birth mother" to use "an adoption proceeding to become a legally recognized as a child's parent." Dkt. 41 at 6. "History and tradition guide and discipline this [fundamental right] inquiry but do not set its outer boundaries. . . . The nature of injustice is that we may not see it in our own times." *Obergefell*, 135 S.Ct. at 2598. The liberty incorporated in the Due Process Clause anticipates that "times can blind us to certain truths

---

*Casey*, 505 U.S. 833, 851 (1992)). The Court held the right to commit suicide was not a fundamental liberty interest protected by due process. *Glucksberg*, 521 U.S. at 728 ("The history of the law's treatment of assisted suicide in this country has been and continues to be one of the rejection of nearly all efforts to permit it.").

[12] Within the Ninth Circuit, Nevada, Washington and California use language in their artificial insemination statutes that is gender and marital status neutral.

Nevada's Finding of Parentage by Consent; Exception provides:

 1. Consent by a person who intends to be a parent of a child born by assisted reproduction must be in a declaration for the voluntary acknowledgment of parentage, signed pursuant to NRS 126.053.

 2. Failure of a person to sign a declaration for the voluntary acknowledgment of parentage required by subsection 1, before or after the birth of the child, does not preclude a finding of parentage if the woman and the person, during the first 2 years of the child's life, resided together in the same household with the child and openly held out the child as their own. Nev. Rev. Stat. Ann. § 126.680 (2017).

Similarly, Washington's Consent to Assisted Reproduction statute states:

 1. Consent by a couple who intend to be parents of a child conceived by assisted reproduction must be in a record signed by both persons. This requirement does not apply to a donor.

 2. Failure of the person to sign a consent required by subsection (1) of this section, before or after birth of the child, does not preclude a finding of parentage if the persons resided together in the same household with the child and openly held out the child as their own. R.C.W.A. § 26.26.715 (2018).

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 11

and later generations can see that laws once thought necessary and proper in fact serve only to oppress. As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom." *Lawrence v. Texas*, 539 U.S. 558, 578 (2003). "Established traditions" that convey a message of disfavor towards same-sex couples and their families by unjustifiably discriminating on the basis of sex and sexual orientation or serve to impose continuing harms violate equal protection and due process, and can no longer be enforced in violation of the Due Process Clause.

"[O]ne aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Carey v. Population Services, Intern.*, 431 U.S. 678, 684 (1977) (quoting *Roe v. Wade*, 410 U.S. 113, 152 (1973)).[13] "'If the right of privacy means anything, it is the right of the individual, married or single, to be free of unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'" *Carey*, 431 U.S. at 685 (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)). Laws that implicate fundamental rights, including when the decision of "whether to bear or beget a child is involved, . . . may be justified only by compelling state interests, and must be narrowly drawn to express only those interests." *Carey*, 431 U.S. at 686 (citing *Roe*, 410 U.S. at 155-156)).

Defendants' argument that Plaintiffs are seeking to "create new fundamental rights" fails to recognize their current policies allow unmarried, opposite-sex couples to be "legal parents"

---

[13] In *Carey* Justice Brennan delivered the opinion of the Court in Parts I, II, III and V which were joined by Justice Stewart, Justice Marshall and Justice Blackman. *Carey*, 431 U.S. at 681. Justice Stevens also joined in Parts I, II, and III of Justice Brennan's opinion. 431 U.S. at 712. Therefore the Court's analysis of *Eisenstadt* as stated in Parts II and III of the opinion was approved by a majority of the Justices.

without any biological relationship by simply signing a voluntary acknowledgment of paternity.[14] Defendants fail to acknowledge that the Supreme Court has long held that every individual has a fundamental right to bear or beget a child free of government intrusion.[15] Violations of fundamental rights are not subject to rational basis review. *Heller v. Doe*, 509 U.S. 319-321 (1993). *Windsor* requires that "heighten scrutiny applies to classifications based upon sexual orientation." *SmithKline Beecham Corp. v. Abbott Laboratories,* 740 F.3d. 471, 483 (9th Cir. 2014) (citation omitted). "[T]here can no longer be any question that gays and lesbians are no longer a 'group or class of individuals normally subject to 'rational basis review.'" *Id*. at 484 (quoting *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143 (1994)).

Defendants do not identify any actual or legitimate purposes that overcome the disparagement and injuries caused by the discrimination against unmarried, same-sex couples who artificially conceive. Since Defendants permit unmarried, gay and lesbian persons to adopt, it serves no valid interest to prevent the same unmarried persons from becoming a "legal parent" of a child conceived by artificial insemination.[16] Defendants have no compelling interest in enforcing an arbitrary adoption requirement that imposes an unequal status on gays and lesbians who must

---

[14] The Ninth Circuit previously rejected a similar justification for discrimination "that a child reared by its biological parents is socially preferred and officially encouraged." *Latta*, 771 F.3d at 468.

[15] Defendants' argument that only biological parents should be recognized as "legal parents" fails to consider that in Idaho married opposite-sex and same-sex couples regardless of how they conceive a child are presumed to be the "legal parents" and unmarried opposite-sex couples who conceive by artificial insemination are recognized as "legal parents" without any evidence of a biological relationship by signing a voluntary acknowledgement of paternity. *See supra* at 8-9. Defendants only insist that unmarried same-sex couples, who conceive by artificial insemination, must adopt before they are recognized as "legal parents."

[16] Defendants have attempted to convince Plaintiff Ayala to adopt L.O.A. during the Child Protection proceeding in order to forestall a decision by the Court. Plaintiff Ayala has repeatedly explained, without trying to alienate Defendants' case managers, that she already considers herself L.O.A.'s parent and does not want to pursue adoption or any potential assistance offered by Defendants. Response Dkt. 41 at 6. *See also* Declaration of Adela Ayala in Support of Reply and Dec. Giuttari at Ex. C IDHW 0048 (9/27/2017).

REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 13

use artificial insemination to conceive a child, and serves no legitimate purpose except to inflict injury upon, and perpetuate second-class status and legal inferiority on same-sex couples and their children based upon sex and sexual orientation. The Court should prohibit the continuing harm caused by Defendants' policies.

### 6. There Is No Compelling Interest For Discriminating Between Married And Unmarried Couples In The Private Decision To Conceive A Child By Artificial Insemination.

Defendants' argument that the discriminatory treatment of unmarried, same-sex couples is not subject to heighten scrutiny because "persons unmarried to birth mothers" are not a suspect class and "such persons have no fundamental rights to be legally recognized as parents" fails to apply longstanding due process and equal protection principles. Dkt. 41 at 7. The suspect class is not as defined as "persons unmarried to birth mothers," but are classifications based upon the sexual orientation of gay and lesbian couples which requires heightened scrutiny. *SmithKline*, 740 F.3d at 483. Defendants' contention that *Eisenstadt* should be limited to the prohibition of the distribution of contraception to unmarried persons has rejected by the Supreme Court. *Carey*, 431 U.S. at 687 ("The fatal fallacy in this argument is that it overlooks the underlying premise of those decisions that the Constitution protects 'the right of the individual . . . to be free from unwarranted governmental intrusion into . . . the decision whether to bear or beget a child.'") (citing *Eisenstadt*, 405 U.S. at 453). In *Carey*, the Court held that *Eisenstadt* is not dependent on a state's power to regulate contraceptives between married and unmarried persons, but derives from the "constitutional protection of an individual autonomy in matters of childbearing." *Id*.; *see also Obergefell*, 135 S.Ct. at 2597-2598 ("In addition these liberties [not included in the rights enumerated in the Bill of Rights] extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." (citing

*Eisenstadt*, 405 U.S. at 453). Defendants have admitted to not enforcing the consent requirements before married, opposite-sex couples and same-sex couples can conceive a child by artificial insemination. Defendants recognize that an unmarried opposite-sex couple, who conceives a child by artificial insemination, can be a "legal parent" by signing a voluntary acknowledgement of paternity. There is no compelling interest in discriminating between married and unmarried couples who conceive a child by artificial insemination since Defendants do not even enforce the consent requirements of the Artificial Insemination Act, and unmarried, opposite-sex couples are recognized as "legal parents" under the Paternity Act without adopting the child.

Dated this 7th of March, 2018.

/s/ Howard A. Belodoff

/s/ Jennifer Giuttari
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 7th of March, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| Lawrence G. Wasden | Steven L. Olsen | W. Scott Zanzig |
|---|---|---|
| Attorney General | Chief of Civil Litigation | Deputy Attorney General |
| | steven.olsen@ag.idaho.gov | scott.zanzig@ag.idaho.gov |

/s/ Howard A. Belodoff