# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADELA AYALA, individually, and as Next Friend of L.O.A., a minor child,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD M. ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare and ELKE SHAWTULLOCH, in her official capacity as Administrator of the Division of Public Health, Bureau of Vital Statistics and Health Statistics,<br><br>Defendants. | Case No. 1:16-cv-00501-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendants' Motion for Judgment on the Pleadings (Dkt. 37) and Plaintiffs' Motion for Summary Judgment (Dkt. 38). The Court heard oral argument on the motions on April 5, 2018, and now issues this Memorandum Decision and Order.

## BACKGROUND

In 2012, Plaintiff Adela Ayala was in a same-sex relationship with Janina Oquendo. Ayala and Oquendo wanted to get married, but the State of Idaho prevented

them from doing so because it precluded same-sex marriage. *See Ayala Decl. 2*, ¶¶ 7 & 35, Dkt. 38-3; *Oquendo Decl.* at ¶ 3, Dkt. 26-3. Through artificial insemination, Oquendo conceived and gave birth to L.O.A. on August 25, 2012. *Ayala Decl.*, ¶¶ 4-23, Dkt. 38-3. Ayala and L.O.A. have no biological relationship, and Oquendo is listed as the birth mother on L.O.A.'s birth certificate; no birth father is listed. *Id*. ¶ 25. Ayala is not listed on the birth certificate, but L.O.A retains Ayala's surname. Id. ¶ 28.

In February 2015, Ayala and Oquendo broke up. *Id*. ¶ 41. LO.A. was primarily in Ayala's care after the break up. *Id*. ¶ 42. In the Spring of 2016, Oquendo agreed to give Ayala custody of L.O.A. for three years. *Id*. ¶ 45. On May 13, 2016, Oquendo executed a power of attorney giving Ayala full parental authority over the care of L.O.A. and Oquendo's son from a prior relationship. *Id*. ¶ 46. On June 9, 2016, Oquendo revoked the power of attorney and took physical custody of both children. *Id*. ¶ 47. Oquendo then took L.O.A. to California to stay with her godmother for two months and grandmother for three and one-half weeks. *Id*. ¶ 48. In July 2016, Oquendo brought L.O.A. back to Idaho, and L.O.A. stayed with Ayala part-time. *Id*. ¶¶ 50-51. After L.O.A. reported abuse by her brother to Ayala, the Idaho Department of Health and Welfare ("IDHW") filed a petition to obtain legal custody of L.O.A. *Id*. ¶ 54. Although IDHW did not recognize Ayala as L.O.A.'s parent, it placed L.O.A. with Ayala as a foster parent. *Id*. ¶ 55. Ayala filed her Complaint in this case on November 17, 2016. On November 28, 2017 Oquendo voluntarily agreed to terminate her parental rights of L.O.A. *Id*. ¶ 65. On January 30,

2018 the State Court entered an order terminating Oquendo's parental rights, and L.O.A. remains in foster care with Ayala.

This Court issued its decision on the preliminary injunction and motion to dismiss on August 24, 2017, allowing Plaintiffs to proceed on the claims related to I.C. §§ 39-255 and 39-5405. On January 30, 2018, Defendants filed their pending motion for judgment on the pleadings, and Plaintiffs filed their motion for summary judgment two days later.

## LEGAL STANDARDS

### 1. Judgment on the Pleadings Legal Standard

Defendants seek dismissal for failure to state a claim on which relief can be granted. When a defendant brings such motion after answering the complaint, the motion is treated as one for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c), rather than Rule 12(b)(6). *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 n. 2 (9th Cir.1992). Motions to dismiss under Rules 12(c) and 12(b)(6) differ only in the time of filing; because they are functionally identical, the same standard applies to motions brought under either rule. *Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)(citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989)). "A judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866, n.1 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### 2. Summary Judgment Legal Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a motion is particularly appropriate in a case like this, where there is no real dispute about the facts of the case. To the extent there is a factual dispute, the evidence, and all reasonable inferences from the evidence, must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## MOTIONS

### A. Defendants' Motion for Judgment on the Pleadings

Defendants' request for judgment on the pleadings rests solely on a statute of limitations argument. State law determines the statute of limitations applied to civil rights

actions in federal court. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (overruled only as to claims brought under the Securities Exchange Act of 1934). Because section 1983 claims are subject to the state statute of limitation for personal injury, the applicable Idaho statute of limitations is two years. Idaho Code § 5–219(4); *see also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 926 (9th Cir.2004). But federal law determines when the claim accrues. *Gregg v. Hawaii, Department of Public Safety,* 870 F.3d 883, 887 (9th Cir. 2017). And according to federal law, a civil rights claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury." *Id*. (citing *Bonneau v. Centennial School Dist. No. 28J,* 666 F.3d 577, 581 (9th Cir. 2012) and *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999)). A plaintiff "must be diligent in discovering the critical facts." *Id*. "A cause of action accrues even if the full extent of the injury is not then known." *Id*. (Internal citation and quotation omitted).

Here, Ayala was denied the right to be named as a parent on L.O.A.'s birth certificate when L.O.A. was born on August 25, 2012, but Ayala did not file her lawsuit until November 17, 2016. Because the gap between these two dates was clearly more than two years, the briefing and oral argument focused on whether the continuing violation doctrine bridged that gap.

However, upon further reflection, the Court has determined that August 25, 2012 is not the correct accrual date. As noted above, a civil rights claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the

cause of that injury. *Gregg,* 870 F.3d at 887. For Ayala to have known of the violation of her right to be put on L.O.A.'s birth certificate in August 2012, she had to know that such right existed and was recognized under the Constitution. But in 2012, there was no recognized constitutional right for same-sex couples to marry. That right was not recognized until June 26, 2015. *See Obergefell v. Hodges,* 135 S.Ct. 2584 (2015). In fact, Idaho law expressly prohibited same-sex couples from marrying.

Although not exactly on point, *Gregg* is instructive here. Gregg sued the State of Hawaii for psychological injuries she sustained from therapy received while in state custody. Like this case, the applicable statute of limitations for Gregg's § 1983 claim was two years. Gregg was released from custody in November 2011, but she did not file her complaint until January 2014, more than two years after her release from custody. The district court ruled that Gregg's claim accrued when she stopped participating in therapy sessions at the facility in November 2011.

The Ninth Circuit reversed the district court's ruling, and allowed Gregg to amend her complaint to assert that she first became aware of her psychological injuries well after her release from custody. *Gregg,* 870 F.3d at 889. The court reasoned that someone in Gregg's psychological position may be unable to recognize she was being injured during her therapy.

This case does not involve psychological injuries like those suffered by Gregg. But there is still good reason why Ayala would not have known she was injured when the State of Idaho prevented her from being named on L.O.A.'s birth certificate. As of

August 25, 2012 (L.O.A.'s date of birth) Idaho precluded same-sex marriage. In turn, Idaho prevented the same-sex partner of a biological mother from being named as a parent on that child's birth certificate. Thus, for Ayala to have known of her injury on August 25, 2012 she would have to have known that state-level bans on same-sex marriage violated the United States Constitution. But that landmark holding was not issued until June 26, 2015, almost three years later. *See Obergefell v. Hodges,* 135 S.Ct. 2584 (2015).

One may suggest that Ayala could have filed a lawsuit contesting the ban on same-sex marriages when L.O.A was born, but that is not the reality of constitutional law. To borrow language from cases in the habeas context, "to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar." *Reed v. Ross,* 468 U.S. 1, 15 (1984). "It is in the nature of our legal system that legal concepts, including constitutional concepts, develop slowly, finding partial acceptance in some courts while meeting rejection in others." *Id.* "Despite the fact that a constitutional concept may ultimately enjoy general acceptance . . . when the concept is in its embryonic stage, it will, by hypothesis, be rejected by most courts." *Id.* Therefore, "a rule requiring a defendant to raise a truly novel issue is not likely to serve any functional purpose."

The Court recognizes that *Reed* has no specific precedential value to this case, but the observations on constitutional concepts are persuasive. This is especially true in this case where the State of Idaho and Idaho state courts took no steps in the direction of

legalizing same-sex marriage before *Obergefell*. To the contrary, Idaho had enacted a statute and passed a constitutional amendment prohibiting same-sex couples from marrying.

The Court finds that Ayala knew or should have known of her injury on June 26, 2015, the date the United States Supreme Court issued its decision in *Obergafell*. Ayala filed her Complaint on November 17, 2016, less than two years later. Accordingly, the Complaint was filed within the statute of limitations, and the motion for judgment on the pleadings will be denied.

## II. Plaintiffs' Motion for Summary Judgment

Plaintiffs' briefs supporting their motion for summary judgment were not as helpful as they could have been. The briefs were convoluted, disorganized, and overlength. As the Defendants noted in their response brief, Plaintiffs' opening brief was far from clear, and it appeared Plaintiffs were trying to present claims beyond those asserted in the Complaint or allowed by the Court' earlier Memorandum Decision and Order. However, with regard to the two claims the Court did allow to proceed, Defendants appear to have acknowledged that, but for the statute of limitations argument, the claims would likely warrant summary judgment. And that is, in fact, how the Court will rule.

As explained in the Court's earlier Memorandum Decision and Order, Plaintiffs have standing to pursue the two claims based on I.C. § 39-255 and I.C. § 39-5405. Ayala has presented substantial evidence that she and Janina Oquendo (L.O.A.'s birth mother)

would have been married at the time of L.O.A.'s conception or birth, but for the same-sex marriage ban in Idaho. The couple was "engaged in February of 2012 and planned to get married, but were unable to get married because Idaho had enacted a statute and passed a constitutional amendment prohibiting same-sex couples from marrying, and the State refused to recognize the legality of same-sex marriages performed in other states." See Oquendo Decl. at ¶ 3, Dkt. 26-3. At the time of L.O.A.'s birth, Oquendo learned that Ayala's name could not be recorded on the birth certificate because the Idaho Department of Health and Welfare birth certificate form did not recognize parentage of same-sex couples. Id. at ¶ 8. Although Ayala was unable to be listed as a parent on L.O.A.'s birth certificate, Oquendo "[c]onsistently and publicly declared to . . . family, friends, and co-workers that L.O.A. is our daughter." See Oquendo Decl. at ¶ 12, Dkt. 26-3. (emphasis added). Further, Oquendo stated she has "[n]o objection to Adela Ayala being legally declared the parent of L.O.A. and would request that she be listed as a parent on L.O.A.'s birth certificate." *Id.*

Had the State of Idaho allowed Ayala and Oquendo to be married, Ayala would have been listed as a parent of L.O.A. on the birth certificate pursuant to I.C. § 39-255 and 39-5405. Not being listed as the actual parent on the birth certificate has legal and emotional consequences for Ayala which violate her rights under the Due Process and Equal Protection Clauses of the 14th Amendment. Accordingly, the Court will grant summary judgment in favor of Plaintiffs on these two remaining claims, and require the State of Idaho to add Ayala as a parent on L.O.A.'s birth certificate.

### III. Supplemental Briefs

The Court provided a copy of the above memorandum to the parties in this case without first issuing the decision. The Court was concerned that the decision would have unanticipated adverse consequences for Ayala and her child. For example, Ayala and her child will lose adoption assistance benefits if she forgoes the adoption process which is already underway. And as pointed out by Defendants in their supplemental briefs, Idaho statutes require different wording on the amended birth certificate where there is no adoption.

However, Ayala has notified the Court through her counsel of record that she wants the Court to issue its decision instead of withdrawing her claims and proceeding with the adoption. She does request that the Court alter the amended birth certificate language, but the Court has no authority to do so. The Court also recognizes that attorney fees are at stake here, and that some of the issues address above are novel ones. Therefore, the Court will issue its final decision, and each party may appeal the decision, knowing the potential adverse effects each party may face when the circuit court issues its opinion.

**ORDER**

**IT IS ORDERED:**

1. Defendants' Motion for Judgment on the Pleadings (Dkt. 37) is **DENIED**.
2. Plaintiffs' Motion for Summary Judgment (Dkt. 38) is **GRANTED in part** and **DENIED in part**. It is granted to the extent that the Court finds that I.C.

§§ 39-255 and 39-5405 were unconstitutional as applied in this case, and that the State of Idaho must add Ayala as a parent on L.O.A.'s birth certificate. It is denied on all other grounds.

3. The unopposed motions to seal (Dkts. 44 & 49) are **GRANTED**.

4. The Motion for Leave to File Excess Pages (Dkt. 50) is **GRANTED** but the Court strongly cautions counsel against unwarranted overlength briefs in the future.

DATED: July 30, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge